FILED
2014 Sep-09  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **KENNY L. HOLMAN and** | ) | |
| **SANDRA K. HOLMAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 5:12-cv-02057-JEO** |
| | ) | |
| **STATE FARM FIRE AND** | ) | |
| **CASUALTY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION</u>**

This case concerns cracks in the foundation walls and exterior brick veneer of the plaintiffs' house. The plaintiffs contend that the cracks were caused by the torsional stress placed on their house during a tornado and that the damage is covered under their homeowners insurance policy. Defendant State Farm Fire and Casualty Company ("State Farm") contends that the cracks were caused by hydrostatic pressure and the movement of the underlying soils and that the damage is not covered under the homeowners policy. Consequently, State Farm has refused to pay the plaintiffs' claim for damage to their house, and the plaintiffs have sued State Farm for breach of contract and for bad faith refusal to pay their claim.

The case is now before the court on State Farm's motion for summary judgment on both of the plaintiffs' claims. (Doc. 21). [1] Because there is a genuine dispute as to the cause of the cracks in the walls and brick veneer of the plaintiffs' house, the court finds that the motion is due to be denied as to the plaintiffs' breach of contract claim and granted as to their bad faith claim.

---

[1] Citations to "Doc(s). __" are to the document numbers assigned by the clerk to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet.

## I.  Facts[2]

Plaintiffs Kenny and Sandra Holman (the "Holmans") reside at 1053 County Road 316 in Jackson County, Alabama.  In 2010, State Farm issued a homeowners insurance policy (the "Policy") insuring the Holmans' home and its contents against loss.

On the morning of April 27, 2011, a series of tornados occurred in various places throughout Alabama.  Mrs. Holman testified that three storms passed through the area where the Holmans live. (S. Holman Depo., Doc. 21-1 at 7-11).  Mrs. Holman and her two children were at home when the first storm hit. (*Id.* at 7).  According to Mrs. Holman, there was "quite a bit of hail" and "heavy winds" but "[v]ery little rain." (S. Holman Depo., Doc. 22-1 at 8-9). She testified that she went into the basement with her children and that they heard "cracking and popping" and "a loud roaring sound." (*Id.* at 9).  She further testified that "we actually felt the wall vibrate." (*Id.*)  The storm knocked out the power to their home.[3] (*Id.* at 8).

On May 6, 2011, Mrs. Holman went back into the basement of her home and observed a vertical crack in the front wall of the basement. (Doc. 21 at ¶ 18).  The Holmans then inspected the entire house for damage. (*Id.* at ¶ 20).  They found other cracks in the basement walls and in the brick veneer at the four corners of the house. (*Id.*)

Mrs. Holman contacted her State Farm agent and reported the damage to their home. (*Id.* at ¶ 19).  On May 28, 2011, Philip Germany, a State Farm representative, inspected the home. (*Id.* at ¶¶ 21-22).  After completing his inspection, Germany reviewed his observations with Dwayne Gipe, a State Farm Catastrophe Team Manager. (*Id.* at ¶ 29; Gipe Aff., Doc. 22-19 at ¶

---

[2] These are the facts for summary judgment purposes only.  They may not be the actual facts.

[3] The Holmans left their home after the first storm passed, and were not home when the other storms occurred. (S. Holman Depo., Doc. 22-1 at 9-10).

2).  Gipe determined that an engineer needed to be consulted to independently determine what caused the cracks and recommend a repair process. (Doc. 21 at ¶ 29).

State Farm retained PT&C Forensic Consulting Services, PA ("PT&C") from Atlanta, Georgia, to inspect the Holmans' home. (*Id*. at ¶¶ 30-31).  Grant Renne, a PT&C consultant, performed the inspection on June 8, 2011. (*Id*. at ¶¶ 32-33).  In his inspection report, Renne concluded as follows:

> No structural elements were damaged as a result of the high winds associated with the tornado on April 27, 2011.
>
> The south basement wall has fractured and sections of the CMUs have become dislodged due to historical damage from expansive clays, exacerbated by improper site drainage condition which allowed storm water runoff associated with the tornado on April 27, 2011 to accumulate against the basement wall. The accumulated runoff applied hydrostatic pressure to the historically damaged basement wall resulting in failure.

(Doc. 23-11 at 24).

By letter dated July 19, 2011, State Farm advised the Holmans that it was denying their claim, stating: "From the results of our discussions, site inspection (which includes the engineer's inspection), and investigation, it was found that the damage to your basement walls and brick veneer was not caused by the tornados of April 27, 2011.  The damage was determined to have been caused by historical damage from expansive clays and hydrostatic pressure, which caused the collapsing of the basement wall." (Doc. 23-11 at 9-10).

After State Farm denied their claim, the Holmans hired engineer Stephen Hendrix to inspect their house. (Doc. 21 at ¶ 44).  Hendrix inspected the house on August 5, 2011, and noted in his report that "[t]he most severe cracking was at the front porch where the foundation wall returns 90 degrees toward the front of the house" and that the cracking appeared to be "newer cracks" and did not appear to be "related to horizontal pressure or to cracks related to settlement

of the foundation." (Doc. 22-15 at 33). He also observed "cracking of the brick veneer at the corners of the house … which would indicate torsional stress as a result of the lateral loads imposed on the house from the severe winds and multi-directional winds of the tornado." (*Id.* at 34). The Holmans provided a copy of Hendrix's report to State Farm, but State Farm again denied their claim. (Doc. 23-11 at 85-88).

Although State Farm again denied the claim, State Farm forwarded a copy of Hendrix's report to PT&C. (*Id.* at 130). After reviewing the report and conducting a second inspection of the Holmans' house on February 14, 2012, PT&C reported that it stood by its original opinion with no changes or updates. (*Id.* at 130-31). State Farm again notified the Holmans that their loss was not covered by their Policy. (*Id.* at 139).

Mrs. Holman then filed a complaint against State Farm with the Alabama Department of Insurance. (Doc. 21 at ¶¶ 57-58). State Farm suggested getting a mediator involved to resolve the dispute. (*Id.* at ¶ 60). State Farm also suggested that PT&C and Hendrix get together at the Holmans' house to evaluate the damage jointly and that a third engineer be retained to resolve any differences. (*Id.* at ¶ 61). The Holmans did not accept either suggestion.

On April 4, 2012, PT&C issued a second supplemental report on the damage to the Holmans' house. (Doc. 23-11 at 166-68). PT&C reiterated its finding that "[n]o structural elements of the residence were damaged as a result of the high winds associated with the tornado on April 27, 2011." (*Id.* at 167). State Farm then sent the Holmans a fourth letter denying their claim. (*Id.* at 170-73).

The Holmans initiated this action on April 26, 2012. After filing suit, they retained a second engineer, Thomas Retseck, to inspect the damage to their house. In his inspection report, Retseck expressed the opinion that "the house experienced a twisting [e]ffect from the tornado,

thus the masonry cracks at all [four] corners and also a large shear transfer at the offset in the basement wall on the front of the house which cracked and failed the wall." (Doc. 22-16 at 31). He expressed the further opinion that the basement wall damage was "storm related because under normal and previous storm conditions the wall has stayed in place in good condition for many years." (*Id.*).

## II.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue (dispute) of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence that a genuine issue (dispute) of material fact does exist.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  In ruling on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the non-moving party.  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1330 n.2 (11th Cir. 2013); *Hill v. Wal-Mart*, 510 F. App'x 810, 813 (11th Cir. 2013).  The court may consider materials including depositions, documents, electronically stored information, affidavits, and declarations.  FED. R. CIV. P. 56(c)(1)(A).

## III.    Discussion

### A.   Breach of Contract

The elements of a claim for breach of contract are "(1) the existence of a valid contract binding the parties, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance under the contract, and (4) resulting damages." *State Farm Fire & Cas. Co. v. Williams*, 926 So.2d 1008, 1013 (Ala. 2005).  Where, as here, the contract is a contract of

insurance, it must be "construed strictly against the insurer and liberally in favor of the insured." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 695 (Ala. 2001).  "Exceptions to coverage in a policy of insurance must be interpreted as narrowly as possible in order to provide maximum coverage of the insured." *Id.*

Here, the only element in dispute is State Farm's performance or nonperformance under the Policy.  State Farm contends that it was not obligated to perform under the Policy because the damage to the Holmans' house was a "loss not insured."  Among the losses not insured under the Policy is any loss that consists of, or is directly and immediately caused by, "pressure or weight of water … whether driven by wind or not to a … foundation" or "settling, cracking, shrinking, bulging, or expansion of … [a] foundation [or] walls." (Policy, Doc. 23-1 at 74). The policy further excludes any loss that would not have occurred in the absence of  "Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not" or "Water Damage, meaning … water below the surface of the ground, including water which exerts pressure on … a building … foundation … or other structure." (*Id.* at 75).  Based on the multiple inspections of the Holmans' house by PT&C, State Farm contends that the damage to the house was "historical damage" resulting from hydrostatic pressure and expansive clays (soils) and that, as a result, the loss is not covered under the Policy.

According to Stephen Hendrix, however, the cracks in the foundation wall are "newer cracks" and do not appear to be related to horizontal pressure or settlement of the foundation.  He has also opined that the cracks in the brick veneer at the corners of the house are indicative of torsional stress resulting from the lateral loads imposed on the house from the severe winds of the tornado.  Thomas Retseck has similarly opined that the house experienced a "twisting effect from the tornado," which caused the cracks in the masonry and created a large shear transfer that

cracked the foundation wall.  In addition, the Holmans testified that very little rain fell as the storms passed through, and they have presented evidence that the type of soil surrounding their home is not expansive and is known for its ability to absorb water. (*See* Doc. 25-2).

In sum, there are genuine disputes as to the cause of the damage to the Holmans' house. Accordingly, State Farm's motion for summary judgment on the Holmans' breach of contract claim is due to be denied.

### B.  Bad Faith Refusal to Pay

State Farm has also moved for summary judgment on the Holmans' claim for bad faith refusal to pay their insurance claim. The Supreme Court of Alabama has identified the elements of a bad faith claim as follows:

> [T]he tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. … Thus, for the tort of bad-faith refusal to pay, "[r]equirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case."

*State Farm Fire & Cas. Co. v. Brechbill*, 2013 WL 5394444, *9 (Ala. Sept. 27, 2013) (citations omitted).  "Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of a legitimate reason for denial." *Id.*

Here, the court finds as a matter of law that State Farm had an arguable and legitimate reason to deny the Plaintiffs' insurance claim. State Farm retained PT&C, an independent engineering consultant, to investigate the cause of the cracks in the Holmans' house.  PT&C concluded that the high winds associated with the tornados on April 27, 2011, did not cause the cracks.  Rather, PT&C determined that the clay soils expanded due to excess water runoff and

that the resulting hydrostatic pressure against the basement walls caused the cracks. PT&C's findings provided State Farm with a legitimate reason to deny the Holmans' claim under the Policy, which excludes losses caused by earth movement or water pressure. It was reasonable for State Farm to rely on PT&C's findings, even if the Holmans and their inspectors do not agree with them. State Farm's decision to deny the Holmans' claim certainly does not rise to the level of "bad faith, dishonesty, self-interest, or ill will inherent in bad-faith conduct." *Brechbill*, 2013 WL 5394444 at *11.

Because State Farm had an arguable and legitimate basis to deny the Holmans' insurance claim, their bad faith claim fails as a matter of law and the claim is due to be dismissed.

## IV. Conclusion

Based on the foregoing, State Farm's motion for summary judgment is due to be **DENIED** as to the plaintiffs' claim for breach of contract and **GRANTED** as to the plaintiffs' bad faith claim. An appropriate order will be entered.

**DONE,** this 9th day of September, 2014.

**JOHN E. OTT**
CHIEF UNITED STATES MAGISTRATE JUDGE